**MATTEL, INC., Appellant,**

v.

**Emilia J. HENSON, Appellee.**

No. 03–1360.

United States Court of Appeals,
Federal Circuit.

Feb. 3, 2004.

———

Before MICHEL, BRYSON, and GAJARSA, Circuit Judges.

PER CURIAM.

This case involves the issue of "excusable neglect" in the context of a failure to prosecute an opposition to a trademark application. Appellant Mattel, Inc. argues that its failure to take any action during the discovery and testimony periods scheduled for Mattel's opposition to appellee Emilia J. Henson's trademark application was excusable neglect, because Mattel did not receive Henson's answer to Mattel's opposition papers. The Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office rejected this argument, denied Mattel's motion to reopen the opposition proceeding, and granted Henson's motion to dismiss. We *affirm.*

## BACKGROUND

The following facts are undisputed:

On June 21, 2001, Mattel filed a notice of opposition to Henson's application for the mark GRANDMA SAYS. On July 10, 2001, the TTAB mailed to the parties notice that the opposition proceeding had commenced. The notice included a scheduling order for the proceeding, with discovery set to close on January 26, 2002, the period for Mattel's testimony set to end on April 26, 2002, the period for Henson's testimony set to

close on June 25, 2002, and the period for Mattel's rebuttal testimony set to end on August 9, 2002.

On September 12, 2001, Henson filed an answer to the opposition.[1] Mattel asserts that either Henson failed to mail the answer to Mattel, or that it was somehow lost in the mail as a result of the September 11 terrorist attacks and the later anthrax attacks. The TTAB's copy of the answer does not contain a certificate of service, and on appeal Henson does not argue that she served the answer on Mattel.

During the discovery and testimony periods, Mattel did not conduct any discovery or take any testimony. Nor did Mattel move for default based on Henson's failure to serve an answer. Indeed, Mattel did not even check on the status of the case until July 2002, when it learned that an answer had been filed. At that point, Mattel began the process of obtaining outside counsel.

Once engaged, on August 29, 2002—almost three weeks after the scheduled end of discovery and testimony—Mattel's outside counsel mailed the TTAB a motion to reopen the opposition proceeding. Henson opposed Mattel's motion to reopen, and filed a cross-motion to dismiss the opposition proceeding for failure to prosecute. On February 13, 2003, the TTAB issued a decision denying Mattel's motion and granting Henson's motion, both on the ground that Mattel had failed to show excusable neglect for its failure to prosecute. Mattel timely appealed to our court.

## DISCUSSION

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B). We review the TTAB's decision for abuse of discretion. *See Hewlett–Packard Co. v. Olympus Corp.*, 931 F.2d 1551, 1552 (Fed.Cir.1991) (stating that abuse-of-discretion standard governed review of TTAB decision to dismiss an opposition proceeding for failure to prosecute, where the TTAB determined that opposer had not shown excusable neglect).

This case involves two procedural rules that ultimately turn on the same legal standard: excusable neglect. First, Mattel's motion to reopen the opposition proceeding was pursuant to Federal Rule of Civil Procedure 6(b), which gives a court discretion to enlarge a scheduled period of time "upon motion made after the expiration of the specified period ... *where the failure to act was the result of excusable neglect.*" (Emphasis added). *See also* 37 C.F.R. § 2.116(a) (incorporating the Federal Rules of Civil Procedure for inter partes trademark proceedings).

Second, Henson's motion to dismiss was pursuant to 37 C.F.R. § 2.132(a), which provides in pertinent part that

[i]f the time for taking testimony by any party in the position of plaintiff has expired and that party has not taken testimony or offered any other evidence, any party in the position of defendant may, without waiving the right to offer evidence in the event the motion is denied, move for dismissal on the ground of the failure of the plaintiff to prosecute.... *In the absence of a showing of good and sufficient cause,* judgment may be rendered against the party in the position of plaintiff.

(Emphasis added.) The TTAB has stated that "[t]he 'good and sufficient cause' stan-

---

1. Henson filed the answer after the scheduled deadline of August 19, 2001, but Mattel has not objected to the late filing, and moreover the TTAB stated in its opinion that "the Board is lenient in accepting late-filed answers, especially when the answer is filed relatively soon after the due date."

dard, in the context of [37 C.F.R. § 2.132(a)], is equivalent to the 'excusable neglect' standard which would have to be met by any motion under FRCP 6(b) to reopen the plaintiff's testimony period." *HKG Indus., Inc. v. Perma–Pipe Inc.*, 49 USPQ2d 1156, 1157 (T.T.A.B.1998). Neither Mattel nor Henson challenges this interpretation.

In analyzing excusable neglect in this case and others, the TTAB has relied on the Supreme Court's discussion of excusable neglect in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). *See, e.g., Old Nutfield Brewing Co. v. Hudson Valley Brewing Co.*, 65 USPQ2d 1701, 1702–04 (T.T.A.B. 2002) (applying *Pioneer* factors for excusable neglect); *HKG Indus.*, 49 USPQ2d at 1157–58 (same). The *Pioneer* case dealt with a bankruptcy rule that "empower[ed] a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect.' " 507 U.S. at 382, 113 S.Ct. 1489. The Supreme Court defined the inquiry into excusable neglect as

> at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... [1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*Id.* at 395, 113 S.Ct. 1489. Neither Mattel nor Henson challenges the applicability of the *Pioneer* factors to the analysis of excusable neglect in the TTAB context. Applying these factors in this case, the TTAB determined that the first factor favored excusable neglect, the second and third

factors undercut excusable neglect, and the fourth factor was neutral; the TTAB stated that "on balance, we find that opposer's failure to take testimony was not the result of excusable neglect."

On appeal, Mattel argues that the TTAB erred in analyzing the second and third *Pioneer* factors. As for the second factor, Mattel contends that "[t]here was a delay of a little more than two months after Mattel's testimony closed before moving to reopen the discovery and testimony periods. The length of this short delay must be considered in the context of the minimal effect (if any) the delay has on the Opposition proceeding." But Mattel mischaracterizes the delay, which was not merely two months, but rather the much longer delay necessary to conduct discovery and take testimony after reopening the proceeding. Because Mattel did nothing in the scheduled discovery and testimony periods, the tandem proceedings would *start* months after the scheduled *end* of discovery and testimony. Such delay would be significant, and would run counter to the TTAB's interest in expeditious adjudication of the cases on its docket.

The TTAB's decision in *Old Nutfield Brewing Co. v. Hudson Valley Brewing Co.*—relied on by the TTAB in the instant case—is on point. In *Old Nutfield*, the opposer failed to conduct discovery and take testimony in the scheduled period, and then moved to reopen because of excusable neglect, based in part on the applicant's failure to serve an answer. 65 USPQ2d at 1701–02. In evaluating the second *Pioneer* factor, the TTAB stated:

> If not for opposer's failure to take testimony as scheduled, this case would have already been briefed, and quite possibly already been decided on the merits, even allowing for an oral hearing. If we were to grant opposer's motion to reset its testimony period, trial periods would not close until at least the

end of this year. In determining excusable neglect, it is appropriate to consider the additional delay required to brief and decide the motion to reopen.

Needless to say, such a delay would have a substantial effect on this proceeding, as well as the Board's docket in general. Both the Board and applicant clearly have an interest in seeing the expeditious resolution of this proceeding. Furthermore, the Board's workload is unnecessarily increased when it must devote time and resources to ruling on motions resulting from avoidable delays. In that respect, opposer's inaction in this case has affected not just applicant, but other litigants before the Board.

*Id.* at 1703 (citation omitted). These considerations apply with equal force here. We see no error in the TTAB's analysis of the second *Pioneer* factor. Certainly, the TTAB's finding is supported by substantial evidence.

As for the third *Pioneer* factor, Mattel argues the reason for its delay was Henson's failure to serve her answer on Mattel; according to Mattel, it reasonably assumed that the TTAB would enter a default judgment against Henson. But as the TTAB stated in *Old Nutfield:*

> [I]ssuance of a notice of default is not automatic, and a plaintiff is unjustified in relying on an expectation that one will issue. Opposer could have filed a motion for default judgment at any time [after the deadline for filing an answer]. If opposer had any doubt as to the official status of the case at any time, it had only to call the Board, view the proceeding information on the Internet, or inspect (or have an agent inspect) the public file in person at the Board....

We find the opposer's inaction was unwarranted. It is the opposer which bears the burden of coming forward with evidence to support its case, see Trademark Rule 2.132(a), and it is mani-

festly clear that opposer has not done so here. The plaintiff in a Board proceeding is not automatically relieved of its obligation to take action in the case by the defendant's apparent failure to answer. A Board plaintiff acts at its own risk when it assumes that an answer has not been filed, but makes no further inquiry and takes no other action in the case until after all relevant dates have passed.

*Id.* at 1704 (citation omitted). Again, this logic applies equally to the facts in this case. We see no error in the TTAB's analysis of the third *Pioneer* factor. At the very least, substantial evidence supports the TTAB's finding.

## CONCLUSION

We believe the TTAB's rejection of Mattel's excusable-neglect argument was correct on the merits. In any event, the TTAB's findings on the underlying factors were supported by substantial evidence, and *a fortiori* the TTAB did not abuse its discretion. The TTAB's judgment is affirmed.